784 So.2d 772 (2001)
NETHERTON COMPANY, Plaintiff-Appellant,
v.
Jesse SCOTT, Jr., Defendant-Appellee.
No. 34,521-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2001.
Writ Denied June 22, 2001.
*773 Walter S. Salley, Shreveport, Counsel for Appellant.
Jack M. Bailey, Jr., Shreveport, Counsel for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
WILLIAMS, Judge.
The plaintiff, Netherton Company, appeals an Office of Workers' Compensation (OWC) judgment denying its request for modification of a prior award of temporary total disability benefits to the claimant, Jesse Scott. In addition, the Workers' Compensation Judge (WCJ) found that claimant was not entitled to permanent total disability benefits, and denied his request for approval of an MRI, for penalties *774 and attorney fees. For the following reasons, we affirm.

FACTS
The claimant was first injured while working as a truck driver for Netherton Company in October 1988, when the dump truck he was driving lost its power steering. The claimant stated that he "over strained" his neck and arm while forcibly turning the steering wheel. In November 1988, claimant underwent cervical fusion surgery and he later returned to work.
On May 22, 1989, the claimant was again injured while in the course and scope of his employment. According to the claimant, the truck's gearbox became jammed and his efforts to drive caused a sharp pain down the side of his neck and into his right arm. Since this injury, claimant has been unemployed and he has been receiving workers' compensation benefits of $267 per week. Claimant sought treatment from Dr. James Zum Brunnen, an orthopedic surgeon, who performed two additional cervical fusions. Since that time, claimant has continued to visit his primary treating physician, Dr. Zum Brunnen, with complaints of neck, arm and back pain, and to take prescription medication for his symptoms.
In October 1994, an OWC judgment awarded claimant temporary total disability payments of $267 per week until he "has reached maximum medical improvement." Subsequently, Netherton filed a claim with the OWC seeking to modify the previous compensation award on the grounds that claimant was at maximum medical improvement and thus was not entitled to further temporary total disability benefits under the terms of the 1994 judgment.
After a hearing, the WCJ issued written reasons for judgment, noting that at the time of claimant's injury in 1989, LSA-R.S. 23:1221 provided that temporary total disability benefits shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of the employee's disability may be made, and "the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required." Applying this standard and the odd-lot doctrine, the WCJ found that claimant required continued regular treatment by a physician, that the claimant's physical restrictions prevented him from performing any of the jobs located by Netherton, and that claimant continued to be temporarily totally disabled. The WCJ rendered judgment denying Netherton's request to modify the prior compensation award and denying claimant's reconventional claim for permanent total disability benefits, for approval of an MRI, and for penalties and attorney fees. Netherton appeals the judgment.

DISCUSSION
Netherton contends the WCJ erred in denying its request for modification of the prior compensation award. Netherton argues that claimant is no longer entitled to temporary total disability benefits because he has reached maximum medical improvement.
The WCJ retains continuing jurisdiction over each case, including the authority to make such modifications or changes with respect to former findings or orders relating thereto that may be justified. LSA-R.S. 23:1310.8(A); Bank of Winnfield & Trust Co. v. Collins, 31,473 (La.App.2d Cir.2/24/99), 736 So.2d 263. Upon the application of any party in interest, on the grounds of a change in conditions, the WCJ may review any award and may make an award ending, reducing or increasing the compensation previously awarded. LSA-R.S. 1310.8(B).
*775 Usually, once a judgment has become final, the parties are bound thereby regardless of any future change in circumstances. See LSA-C.C.P. arts. 1841 and 425. However, workers' compensation judgments are treated differently, because if the rules of finality applicable to ordinary civil judgments were applied to compensation awards, the flexibility of the workers' compensation system would be greatly restricted. Falgout v. Dealers Truck Equipment Co., 98-3150 (La.10/19/99), 748 So.2d 399. By allowing compensation awards to be reopened, the overriding purpose of the statutory scheme, that a worker receives compensation for as long as he is disabled, but not longer, is ensured. Falgout, supra.
Here, the claimant previously had been awarded workers' compensation benefits and Netherton sought modification based on an alleged change in the worker's condition. Thus, pursuant to R.S. 23:1310.8(B), the WCJ was authorized to review the prior award and to apply the Workers' Compensation Act.
In its brief, Netherton asserts that under the language of the previous judgment, the claimant is no longer entitled to temporary total disability benefits because of physician testimony that he has reached maximum medical improvement (MMI). However, the standard for determining the claimant's continued entitlement to temporary total disability benefits is governed by the law in effect at the time of injury. Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir.8/19/94), 642 So.2d 684. Thus, Netherton's assertion that this court is limited to consideration of the previous award's language is without merit.
At the time of the claimant's injury, LSA-R.S. 23:1221 provided that compensation shall be paid for any injury producing temporary total disability of an employee to engage in any self-employment or "gainful occupation for wages," whether or not the same or similar occupation as that in which the employee was customarily engaged. Temporary total disability (TTD) benefits shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of the employee's disability may be made, and "the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required." LSA-R.S. 23:1221(1)(b). Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551.
Prior to January 1, 1990, courts considered the odd-lot doctrine in determining TTD status. A claimant is considered temporarily totally disabled when he cannot perform any services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for those services does not exist. Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990). The observations and opinions of the treating physician, although not conclusive, are to be accorded greater weight than those of a physician who has not served in that capacity. Williams v. Jones Truck Lines, Inc., 27,465 (La.App.2d Cir.11/1/95), 662 So.2d 867.
In the present case, Dr. Carl Goodman, the employer's chosen orthopedic specialist, testified by deposition that he had examined claimant on November 30, 1998, and opined that he had reached MMI. Dr. Goodman reported that claimant could perform sedentary or light duty work. Dr. Douglas Brown, an orthopedic surgeon, was appointed by OWC to perform an *776 independent medical examination of the claimant. Dr. Brown testified in his deposition that he had examined claimant in May 1999. Dr. Brown opined that claimant had reached MMI and could "probably" perform at a medium work level, which requires lifting up to 35 pounds frequently and 50 pounds occasionally.
Dr. James Zum Brunnen, an orthopedic surgeon, performed two surgical fusions of the claimant's cervical spine, the second done in February 1995. Dr. Zum Brunnen testified by deposition that the fusions were successful and that after the surgeries, he continued to see claimant every three months. Dr. Zum Brunnen explained that claimant continued to require pain medication and follow-up visits were necessary to assess its effectiveness and to check for any side effects. In addition, Dr. Zum Brunnen stated that claimant "needed some doctor to follow him since he's had the three neck surgeries."
Dr. Zum Brunnen disagreed with the opinions of the other physicians that claimant could perform light or medium duty work. Dr. Zum Brunnen opined that from a "strictly cervical spine standpoint," the claimant could perform some type of sedentary work if it was not "any harder than activities of day to day living" and subject to physical restrictions. Dr. Zum Brunnen testified that he would restrict claimant to lifting no more than five to ten pounds occasionally, with no climbing, crawling or repetitive looking up and down or side to side, no working around equipment and no prolonged sitting or standing. While agreeing that claimant had reached MMI, Dr. Zum Brunnen stated that this did not mean he was well, just that there was not another medical procedure anticipated.
Ellen Bartell, a vocational rehabilitation counselor hired by Netherton, testified that her records showed the claimant had completed the eleventh grade, received training in arc welding and possessed a chauffeur's license. His work history included jobs as a dump truck driver, tractor-trailer truck driver, cement mixer operator and welder. Bartell stated that jobs within claimant's work history and skills were not a viable option because of the physical restrictions imposed by the various physicians. Bartell testified that Dr. Goodman and Dr. Brown had approved several jobs as within claimant's physical ability, including positions as security guard, sales order clerk and pest control worker. She stated that the security job required "frequent" walking, meaning 3-6 hours of intermittent walking during an 8-hour shift. The pest control job would mean lifting and carrying 10-15 pounds frequently and 20-25 pounds occasionally. The sales job would require using a telephone and completing order forms. Bartell acknowledged that Dr. Zum Brunnen had not approved any of these jobs as within claimant's physical restrictions.
Based upon this record, we cannot say the WCJ was clearly wrong in finding that the claimant required continued regular treatment by a physician and that the jobs located by Netherton were not within claimant's physical capacity. Although Dr. Goodman and Dr. Brown opined that claimant had reached MMI and could perform certain light duty jobs, each physician only saw claimant on a single occasion for approximately thirty minutes. Thus, the WCJ properly accorded greater weight to the observations and opinions of Dr. Zum Brunnen, claimant's treating physician, who opined that claimant's pain and physical limitations would preclude him from any employment except the most restricted sedentary work.
Considering the claimant's physical restrictions, education and training in light of the applicable law, we conclude that the evidence presented supports a finding *777 that claimant's injury places him at a significant disadvantage in the competitive labor market. Consequently, the WCJ did not err in finding that the claimant continued to be temporarily totally disabled under the odd-lot doctrine and in denying Netherton's petition to modify the prior compensation award. In reaching this decision, we pretermit a discussion of the remaining assignments of error asserting a credit for compensation benefits paid and for potential wages.

CONCLUSION
For the foregoing reasons, the OWC judgment denying modification of the prior compensation award is affirmed. Costs of this appeal are assessed to the appellant, Netherton Company.
AFFIRMED.