STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 07-242

MARY LU DOUCET HARDEE

VERSUS

CITY OF JENNINGS

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 04-05403
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Michael G. Sullivan, Billy Howard Ezell, and J. David Painter,
Judges.

AFFIRMED AS AMENDED.

Michael Benny Miller
Miller & Miller
P. O. Box 1630
Crowley, LA 70527-1630
(337) 785-9500
Counsel for Plaintiff/Appellee:
Mary Lu Doucet Hardee

**Lisa Eve Mayer**
**Borne, Wilkes & Brady, LLP**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**(337) 232-1604**
**Counsel for Defendant/Appellant:**
**City of Jennings**

**EZELL, JUDGE**.

The City of Jennings appeals a workers' compensation judgment finding that Mary Lu Doucet Hardee had shown a change in circumstances entitling her to total disability benefits. The City also requests a credit for an overpayment of supplemental earnings benefits.

## FACTS

Ms. Hardee was injured in the course and scope of her employment as a police officer with the City in January 1993. She was attempting to restrain a prisoner when she injured her stomach and back. In 2004, this court rendered an opinion affirming the judgment of the Office of Workers' Compensation that Ms. Hardee was capable of working twenty hours a week at $5.50 an hour. *City of Jennings v. Doucet*, 03-1099 (La.App. 3 Cir. 2/4/04), 865 So.2d 1056.

In 2004, the City filed a motion for summary judgment seeking a judgment that it was entitled to terminate her benefits since it had paid a total of 520 weeks in weekly compensation. On August 3, 2004, a judgment was signed declaring that the City was entitled to terminate SEB as of November 30, 2003.

Meanwhile, on July 23, 2004, Ms. Hardee filed a motion to modify the previous judgment pursuant to La.R.S. 23:1310.8, alleging that there had been a change of conditions since the trial in August and September 2002. A hearing on the matter was held on August 14, 2006. The trial court found that the doctors who had repeatedly examined and treated Ms. Hardee were clear that Ms. Hardee is no longer medically capable of gainful employment. Based on this evidence and Ms. Hardee's testimony, the workers' compensation judge found that Ms. Hardee had shown a change of circumstances and is now totally disabled. He ruled that she was entitled to benefits in the amount of $269.09 per week beginning September 1, 2004. The

1

City appealed the judgment.

## CHANGE IN CIRCUMSTANCES

The City first claims that the workers' compensation judge was manifestly erroneous in relying on the testimony of Ms. Hardee's treating physicians because they were confused about the standard to be applied in determining total disability. During the course of events, Ms. Hardee had moved to Everett, Washington. There she sought treatment from new doctors for her condition.

During his deposition testimony, Dr. Marco Wen was asked about Ms. Hardee's ability to return to work. He explained that he sometimes gets confused with the ability to work standard in Washington which requires that a worker have the ability to work full time. Dr. Wen inquired about the Louisiana standard concerning part-time work. After clarification, he proceeded to answer the question about whether she could return to work. We find that Dr. Wen's testimony establishes that he clarified the Louisiana standard before proceeding to answer the question about Ms. Hardee's ability to return to work. We also find no confusion in Dr. Jaime Novais' testimony concerning the standard. Dr. Novais was the first doctor to treat Ms. Hardee after she moved to Washington. Therefore, we find no merit to this assignment of error.

The City also claims as error the workers' compensation judge's finding that Ms. Hardee proved there was a change in circumstances since the last trial and that she is totally disabled from working. It claims that the evidence presented by Ms. Hardee was not clear and convincing.

Pursuant to La.R.S. 23:1310.8(B), a party may re-open a workers' compensation case and the workers' compensation judge may modify an award on the grounds of a change in condition. "A party who seeks a modification of a worker's

compensation judgment must prove by a preponderance of the evidence that the worker's disability has increased or diminished." *Lormand v. Rossclaire Constr.*, 01-515, p. 2 (La.App. 3 Cir. 12/12/01), 801 So.2d 675, 676. A claimant seeking total disability benefits must prove by clear and convincing objective medical evidence that she is physically unable to engage in any employment. La.R.S. 23:1221. The factual finding of a workers' compensation judge that the claimant has demonstrated a change in condition is entitled to great weight and will not be disturbed unless clearly wrong. *Lormand*, 801 So.2d 675.

Ms. Hardee first saw Dr. Jaime Novais who is board certified in internal medicine and geriatric medicine. He saw Ms. Hardee on July 1, 2002, when she sought treatment for her condition after she moved to Washington. He began seeing her monthly. He observed that she had chronic pain and difficulty walking. He noted that she was going to need ongoing pain management and psychiatric care. At that time, he opined that Ms. Hardee was capable of returning to some type of employment because she was attending college classes.

In December 2002, Dr. Novais referred Ms. Hardee to Dr. Wen, a physical medicine rehabilitation doctor with a sub-speciality in pain medicine. He ordered lumbar facet injections. There was an immediate reduction in pain thereafter but a lack of therapeutic response about five or six hours after the injection. On April 4, 2003, Ms. Hardee fell down a short flight of stairs which triggered lumbar pain. Ms. Hardee had reported to Dr. Novais in 2002 that her leg had given out causing her to fall. Dr. Wen explained that if the weakness in her leg is what was causing her to fall, it brought up the possibility of nerve root compression or nerve root irritation.

Dr. Wen continued with the injections. On July 3, 2003, he performed a lumbar facet rhizotomy. This procedure utilizes radio frequency energy, which heats

3

the nerve and basically kills it or oblates it so there is long-term pain relief. At that time, Ms. Hardee had excellent pain reduction on her left side, with some residual pain on her right side.

Dr. Wen ordered an MRI, which indicated a lateral disc protrusion at L3-4. As of November 2003, Ms. Hardee was experiencing consistent pain on both sides. Dr. Wen ordered a bone scan, which indicated a right facet problem at L1-2, L2-3, and L3-4. Dr. Wen continued administering the injections, which did not seem to be providing any pain relief.

During the course of treatment, Dr. Wen referred Ms. Hardee to Dr. Suzanne Lacross because Ms. Hardee alluded to being very depressed. Dr. Lacross is a psychologist specializing in behavioral medicine and chronic pain management. Dr. Lacross commented that Ms. Hardee was very depressed when she saw her. She believed that Ms. Hardee wanted to be out of pain and resume her life as she once knew it. She knew of no intellectual reason why Ms. Hardee could not return to work but observed that she had been in a pain situation for ten years, which is significant.

Dr. Novais also noted that Ms. Hardee began to have more problems and became more psychiatric unstable. Both Doctors Novais and Wen were of the opinion that a combination of the physical and emotional factors prevented Ms. Hardee from working. Dr. Novais commented that if Ms. Hardee had back pain only, then she would be able to work a job that had no physical demands. Dr. Novais explained that the waxing and waning of Ms. Hardee's condition caused an increase in psychiatric problems. Dr. Novais testified that chronic pain will exacerbate a previous mental problem. Dr. Novais explained that after Ms. Hardee began having more problems and became more mentally unstable, she was unable to work. He stated that her back condition was very serious and that she could not hold a job. Dr.

4

Wen also opined that Ms. Hardee would not be able to engage in any type of gainful employment.

Additionally, both doctors were concerned with Ms. Hardee's cognitive abilities. Since her injury, she has been on numerous medications which have affected her.

We cannot say the workers' compensation judge was clearly wrong in concluding that Ms. Hardee had proven a change in circumstances. Both Dr. Novais and Dr. Wen were clear that she was unable to now work with her increasing psychiatric problems caused by her continuing back problems. We agree with the workers' compensation judge's conclusion that she is now totally disabled.

## CREDIT

On April 21, 2003, a judgment of the Office of Workers' Compensation was signed which held that Ms. Hardee was capable of working twenty hours a week at minimum wage of $5.50 an hour. While that decision was on appeal, the City claims it continued to pay the full amount of SEB of $1,122.69 to Ms. Hardee, when it only owed $813.59. The City claims that the total overpayment during this time was $2,163.70.[1]

The City also claims that it overpaid Ms. Hardee during another time period. In its brief, the City explains that the decision of this court was not rendered until February 2004 and as of November 30, 2003, Ms. Hardee had received 520 weeks of SEB. The City began initiating proceedings to terminate her benefits in January

---

[1] The City offered the following calculation pursuant to La.R.S. 23:1221(3)(a) to explain the amount of overpayment: Ms. Hardee's average weekly wage is $391.63 (260.09 ÷ 2/3). $391.63 x 52 ÷ 12 = $1,697.06 average monthly wages at the time of the injury. The amount Ms. Hardee was found to be capable of earning is $110.00 per week (20 hours per week at $5.50). Ms. Hardee's average monthly wage is $476.67 ($110.00 x 52 ÷ 12). $1,697.06 - $476.67 = $1,220.39 x 2/3 = $813.59. The City claims that Ms. Hardee was overpaid $309.11 each month ($1,122.69, amount actually paid, - $813.59, amount owed) for seven months (May through November, 2003). Total overpayment of $2,163.70.

5

2004. The hearing was held on August 4, 2004. Ms. Hardee was paid the full SEB rate of $1,122.69 through August 31, 2004. The City claims that the total overpayment during this time was $10,104.21 (nine months of payments, December 2003 through August 2004, at the rate of $1,122.69 per month). The City introduced a print-out in the record substantiating these payments.

The City claims it is entitled to a credit for these overpayments of SEB to Ms. Hardee. The total overpayment the City is claiming is $12,267.91.

Ms. Hardee does not dispute the calculations themselves. Ms. Hardee alleges that the evidence indicated that she had a fall on April 3, 2003, which aggravated and worsened her condition. She argues that as of April 3, 2003, she was entitled to total disability benefits at the rate of $261.09 a week or $1,122.69 a month, so she has been receiving the correct amount of benefits as of April 3, 2003.

Louisiana Revised Statues 23:1206 provides that an employer is entitled to deduct any voluntary payment or unearned wages which were not due from compensation payments. Both parties agree that the workers' compensation judgment was silent as to the credit issue, so it is deemed a rejection of the relief requested by the City. *Chesne v. Elevated Tank Applicators*, 04-46 (La.App. 3 Cir. 5/12/04), 874 So.2d 333, *writ denied*, 04-1439 (La. 9/24/04), 882 So.2d 1141.

The reasons for judgment make clear that the workers' compensation judge was aware that Ms. Hardee was claiming she was entitled to total benefits retroactive to 2003. Obviously, the workers' compensation judgment also rejected this claim as the reasons and the judgment itself are clear that she is entitled to total disability benefits as of September 1, 2004. Therefore, we find that the City was entitled to a credit for the overpayment of benefits in the amount of $12,267.91.

6

For the foregoing reasons, the judgment of the trial court finding that Ms. Hardee is now totally disabled and entitled to total disability benefits is affirmed. However, the judgment is amended to give the City a credit of $12,267.91.

**AFFIRMED AS AMENDED.**

7