# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1088


JOHN VITAL

VERSUS

STINE, INC.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 06-06320
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty,
Judges.


**AFFIRMED.**


Michael B. Miller
Attorney at Law
Post Office Box 1630
Crowley, Louisiana  70527-1630
(337) 785-9500
Counsel for Plaintiff/Appellee:
      John Vital

James R. Morris
Morris Law Firm
2917 Ryan Street
Lake Charles, Louisiana  70601
(337) 990-0256
Counsel for Defendant/Appellant:
      Stine, Inc.

**KEATY, Judge.**

In this workers' compensation case, the employer appeals from a judgment denying its motion to modify the weekly compensation due its former employee. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

John Vital injured his back and left leg on September 14, 1998, in the course and scope of his employment with Stine, Inc., when he slipped and fell while carrying a box of roofing shingles. Dr. Clark Gunderson, a board certified orthopedic surgeon, performed a laminectomy from L3 to L5 with a decompression and lumbar fusion on Vital in July of 2003. Vital filed a 1008 Disputed Claim for Compensation (1008) in April of 2006, alleging that Stine was paying him an incorrect compensation rate, that Stine was not providing him with vocational rehabilitation, and that Stine had either made late payments or underpaid his weekly compensation benefits. The 1008 included a claim for penalties and attorney fees.

Following an April 24, 2008 trial, Stine stipulated that Vital had been injured in a work-related accident and that he was entitled to temporarily total disability benefits (TTDs) in the amount of $213.11 per week. On February 21, 2011, Stine filed a motion to modify seeking to have the workers' compensation judge (WCJ) declare that Vital was no longer temporarily totally nor permanently totally disabled. The motion was tried on April 4, 2011. After the presentation of evidence, counsel for Vital agreed that if Vital was no longer permanently or temporarily totally disabled, he would no longer be entitled to supplemental

earnings benefits (SEBs) because he had already received in excess of the maximum 520 weeks of benefits.[1]

In oral reasons for judgment rendered on May 2, 2011, the WCJ stated that Stine had failed to meet its burden of proving that Vital was no longer disabled. Written judgment was signed on May 24, 2011, denying Stine's motion to modify. Stine now appeals, asserting in its sole assignment of error that the WCJ erred in finding Vital "to still be temporarily, totally disabled" and in denying its motion to modify.

## DISCUSSION

In *Odom v. Kinder Nursing Home,* 06-1442, p. 5 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 132, we noted:

> "The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. *LeBlanc* [*v. Grand Isle Shipyard, Inc.,* 95-2452 (La.App. 1 Cir. 6/28/96)], 676 So.2d [1157,] 1161. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. *LeBlanc,* 676 So.2d at 1161." *Walker v. High Tech Refractory Servs., Inc.,* 03-1621, p. 4 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.

*See also Rideaux v. Kohl's Dep't Stores, Inc.,* 11-914 (La.App. 3 Cir. 12/7/11), __ So.3d __, and *Green v. Nat'l Oilwell Varco,* 10-1041 (La.App. 3 Cir. 4/27/11), 63 So.3d 354.

> Pursuant to La.R.S. 23:1310.8(B), a party may re-open a workers' compensation case and the workers' compensation judge may modify an award on the grounds of a change in condition. "A party who seeks a modification of a worker's compensation judgment must prove by a preponderance of the evidence that the worker's disability has increased or diminished." *Lormand v. Rossclaire Constr.,* 01-515, p. 2 (La.App. 3 Cir. 12/12/01), 801 So.2d 675, 676. . . . The factual finding of a workers' compensation judge that [a party] has demonstrated a change in condition is entitled to great weight and will not be disturbed unless clearly wrong. *Lormand,* 801 So.2d 675.

---

[1] *See* La.R.S. 23:1221(3)(d)(ii).

2

*Hardee v. City of Jennings*, 07-242, pp. 2-3 (La.App. 3 Cir. 5/30/07), 961 So. 2d 531, 533, *writs denied,* 07-1779, 07-1799 (La. 11/9/07), 967 So.2d 505, 509.

In oral reasons for judgment, the WCJ stated:

A comprehensive reading and balanced evaluation of all the medical reports, opinions, and documents indicate Mr. Vital is as severely disabled today as he was years ago when he had the accident. In all likelihood his condition has deteriorated. It has certainly not improved, and the employment prospects for this 66-year-old man with very limited education and serious medical problems appear[s] to [have] no merit.

Several months after his July 2003 back surgery, Vital told Dr. Gunderson that he was "a whole lot better than prior to surgery." In July of 2004, Dr. Gunderson recommended that Vital undergo a functional capacity evaluation (FCE). After examining Vital and reviewing the results of the FCE, Dr. Gunderson released Vital to modified duty on August 31, 2004, with the following restrictions: he was to alternate sitting and standing and perform no continual bending, stooping, climbing, or lifting over twenty pounds.

Vital returned to Dr. Gunderson on November 20, 2007, complaining of increased back pain going down both legs to his knees that was aggravated by activity. He told Dr. Gunderson that he had not returned to work after his 2003 back surgery. At that time, Dr. Gunderson believed that Vital was disabled given the fact that he was sixty-three years old and his physical condition was not going to change. Dr. Gunderson wrote Vital a prescription for Darvocet to control his pain. In August of 2009, Dr. Gunderson requested, and Stine gave approval for, Vital to have a lumbar MRI and an electromyography (EMG) of his left lower extremity. The MRI revealed that Vital had post-surgical scarring at L4-5 and L5-S1 and a disc bulge at L3-4 with moderate to severe articular facet degeneration resulting in mild central canal stenosis and bilateral neural foraminal narrowing. The EMG showed "[e]vidence of chronic denervations in [Vital's] left tibialis

anterior, peroneus longus, and vastus lateralis muscles" which, to the evaluating neurologist, Dr. Fayez Shamieh, suggested the presence of chronic L4 root irriation on the left side. After reviewing the results of the MRI and EMG, Dr. Gunderson recommended that Vital undergo a second back surgery, a decompressive lumbar laminectomy at the L3-4 level.

Stine arranged for Vital to be examined by Dr. Michael Holland for a second opinion. In his February 11, 2009 report, Dr. Holland opined that Vital was not totally disabled and that he could return to the workplace at a light-duty level, noting that Vital had an excellent outcome from his 2003 surgery.

Given the diverging opinions of Drs. Gunderson and Holland, the WCJ appointed Dr. Lynn Foret, a board certified orthopedic surgeon, to conduct an independent medical exam of Vital. Dr. Foret examined Vital on March 2, 2010. He stated that the MRI showed that Vital had an abundance of scar tissue which should give Vital "a lot of . . . back pain and spasm," and will only worsen with time. Dr. Foret believed that surgery would stir up the scar tissue again. He found Vital to be very motivated and thought that he should be able to do some type of sedentary mild work that did not involve lifting or prolonged sitting. Nevertheless, when asked to assume that Vital had good days, where he could walk and help with chores such as cooking and doing laundry, and bad days, where he could hardly do anything, Dr. Foret acknowledged that Vital would be unable to hold down any type of job.

At trial, Vital testified that his condition had gradually worsened, especially in the past month. He stated that while the 2003 surgery initially relieved his pain, his pain returned after about one year post surgery. According to Vital, in the interim between his August 2004 and November 2007 visits with Dr. Gunderson, he received Hydrocodone for back and leg pain from a Dr. Clawson who was

4

treating him for bladder infections. Vital explained that he has good and bad days, but that the bad days outnumber the good, and that he has to remain in bed on those bad days. He stated that he would like to work if able and that he would have the second surgery recommended by Dr. Gunderson if it would relieve his pain.

Stine assigns great significance to the fact that there was a three-year period after his surgery when Vital did not seek the care of Dr. Gunderson, his treating orthopedist. However, Vital testified that he received medication for his back and leg pain during that time from a physician that he was seeing for an unrelated condition. Stine also insists that Dr. Foret believed that Vital was not totally disabled and was capable of performing some type of light-duty sedentary work, while completely overlooking the fact that Dr. Foret agreed that Vital would be unable to work at any type of job if he were to regularly have bad days. Given the totality of the evidence and testimony, we cannot say that the WCJ was clearly wrong in making the legal determination that Stine failed to meet its burden of proving that Vital is no longer disabled.

## DECREE

For the foregoing reasons, the judgment of the WCJ denying Stine, Inc.'s, motion to modify John Vital's benefits from temporarily totally disability benefits to supplemental earnings benefits is affirmed. All costs of this appeal are assessed against Stine, Inc.

**AFFIRMED.**