STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-217

VIEL OLIVIER

VERSUS

OLIVIER BUILDERS

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 06-03499
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Marc T. Amy, Shannon J. Gremillion, and John E. Conery, Judges.

**EXCEPTION OF RES JUDICATA DENIED. WORKERS' COMPENSATION JUDGMENT AFFIRMED.**

**THIBODEAUX, Chief Judge, dissents and assigns written reasons.**
**Saunders, J., dissents for the reasons assigned by Chief Judge Thibodeaux.**

**Michael B. Miller**
**Michael B. Miller & Associates**
**Post Office Drawer 1630**
**Crowley, LA   70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Viel Olivier**

**Mark A. Ackal**
**Mark A. Ackal & Associates**
**Post Office Box 52045**
**Lafayette, LA   70505**
**(337) 237-5500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Olivier Builders**

**AMY, Judge.**

The claimant was previously determined to be temporarily and totally disabled and was awarded workers' compensation benefits. In this current dispute, the employer/insurer filed a motion to modify the claimant's award, contending that the claimant had reached maximum medical improvement and seeking to convert his temporary and total disability benefits (TTD) to supplemental earnings benefits (SEB). Finding that there was a change in circumstances, in that the claimant was physically able to work, with restrictions, the workers' compensation judge granted the motion. The claimant appeals. Additionally, the claimant has filed an exception of res judicata. For the following reasons, we deny the claimant's exception of res judicata and affirm the workers' compensation judge's judgment.

### Factual and Procedural Background

In 2003, the claimant, Viel Olivier, was a self-employed carpenter operating under the name of Olivier Builders when he was injured while unloading a miter saw from his truck. Olivier Builders contracted with LUBA Workers' Compensation for workers' compensation insurance. A dispute arose concerning Mr. Olivier's entitlement to benefits and, after a hearing, the workers' compensation court awarded Mr. Olivier workers' compensation benefits. That award was affirmed in part, reversed in part, amended in part, and rendered in *Viel Olivier v. Olivier Builders*, 09-208 (La.App. 3 Cir. 9/9/09), 19 So.3d 573, *writ denied*, 09-2189 (La. 12/11/09), 23 So.3d 918.

Subsequent to that judgment, the parties agreed to reduce the amended weekly indemnity benefit to the maximum amount then authorized by statute. Another dispute arose concerning LUBA's payment of the judgment which

resulted in an award of penalties and attorney fees. Mr. Olivier thereafter filed a second motion for penalties and attorney fees, and in *Viel Olivier v. Olivier Builders*, 12-570 (La.App. 3 Cir. 11/7/12), 103 So.3d 701, *writ denied*, 13-245 (La. 3/8/13), 109 So.3d 366, this court held that Mr. Olivier's second motion was precluded under the doctrine of res judicata.

Thereafter, LUBA filed a motion to modify Mr. Olivier's benefits, seeking a declaration that Mr. Olivier was no longer entitled to temporary total disability benefits because he was capable of light duty work.[1] Mr. Olivier objected, arguing that LUBA was unable to meet its burden of proof with regard to a change in circumstances because the evidence was essentially the same as it had been at the previous hearing. However, after a hearing, the workers' compensation judge found that there had been a change in circumstances and that Mr. Olivier was physically capable of returning to work, with restrictions. The workers' compensation judge granted judgment to that effect. Further, the workers' compensation judge ordered that "the amount of any SEB benefits to which [Mr. Olivier] may be entitled, if any, is to be based upon a zero earning capacity."

---

[1]Pursuant to La.R.S. 23:1221(1)(d), "[a]n award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required." Thus, when a claimant is capable of performing light duty work, or even sedentary work, he is not entitled to temporary total disability. *Fabacher v. Stine, Inc.*, 13-471 (La.App. 3 Cir. 10/9/13), 124 So.3d 553.

With regard to supplemental earnings benefits, generally, the employee bears the initial burden of proving that his work-related injury resulted in his inability to earn 90% or more of his average pre-injury wage. *Clay v. Our Lady of Lourdes Reg. Med. Ctr., Inc.*, 11-1797 (La. 5/8/12), 93 So.3d 536. However, "[o]nce the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region." *Id.* at 539 (citing La.R.S. 23:1221(3)(c)(i)). Here, there is nothing in the record suggesting that Mr. Olivier's inability to earn 90% or more of his average pre-injury wage was contested.

Mr. Olivier appeals, asserting that the workers' compensation judge erred in granting the motion to modify judgment. Mr. Olivier has also filed an exception of res judicata.

**Discussion**

*Exception of Res Judicata*

Mr. Olivier has filed an exception of res judicata in this court. Therein, he asserts that LUBA's motion to modify relitigates the issue of Mr. Olivier's disability which was previously determined after a trial on the merits. Further, Mr. Olivier requests in his attached brief that this court amend the judgment signed October 30, 2014 to clarify his entitlement to SEBs.

Normally, once a judgment has become final, the parties thereto are bound by the judgment regardless of any change in circumstances. *Netherton Co. v. Scott*, 34,521 (La.App. 2 Cir. 4/6/01), 784 So.2d 772, *writ denied*, 01-1333 (La. 6/22/01), 794 So.2d 792. Louisiana Revised Statutes 23:1310.8(E) provides that a "judgment denying benefits is res judicata after the claimant has exhausted his rights of appeal[,]" and, in *Davis v. State, Department of Transportation and Development*, 11-404 (La.App. 3 Cir. 10/5/11), 75 So.3d 549, *writ denied*, 11-2456 (La. 1/13/12), 77 So.3d 969, this court has applied that statute in concert with the res judicata concepts contained in La.R.S. 13:4231. Additionally, the exception of res judicata may be raised for the first time in the appellate court. La.Code Civ.P. arts. 927 and 2163; *Redmann v. Bridgefield Cas. Ins. Co.*, 11-651 (La.App. 5 Cir. 2/28/12), 88 So.3d 1087, *writ denied*, 12-710 (La. 5/18/12), 89 So.3d 1192.

However, workers' compensation judgments are treated differently. *Netherton*, 784 So.2d 772. The workers' compensation judge retains jurisdiction over each workers' compensation case, and has the authority to make

3

"modifications or changes to former findings or orders relating thereto if . . . it may be justified[.]" La.R.S. 23:1310.8(A). Further, "[u]pon the motion of any party in interest, on the ground of a change in conditions, the workers' compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded[.]" La.R.S. 23:1310.8(B). "Res judicata thus cannot preclude litigation seeking a change in the amount of compensation benefits based upon a change in disability." *Gabriel v. Lafourche Parish Water Dist.*, 12-797, p. 6 (La.App. 1 Cir. 2/25/13), 112 So.3d 281, 285, *writ denied*, 13-653 (La. 4/26/13), 112 So.3d 848.

Here, Mr. Olivier asserts that LUBA is essentially re-litigating his disability status, which was determined in 2008, and that the "change in conditions" provisions of La.R.S. 23:1310.8 does not apply. We find no merit to this contention. Our review of the record does not indicate that LUBA is relitigating Mr. Olivier's disability status as it was in 2008. Instead, LUBA filed a motion to modify on the basis that Mr. Olivier is now capable of returning to light duty work. This is litigation seeking a change in the amount of compensation benefits based upon a change in disability as contemplated by La.R.S. 23:1310.8(B), and is thus not precluded by res judicata.

Accordingly, we deny Mr. Olivier's exception of res judicata. Further, we deny Mr. Olivier's request concerning amendment of the October 30, 2014 judgment.

*Change in Circumstances*

LUBA sought a modification of Mr. Olivier's benefits pursuant to La.R.S. 23:1310.8(B), claiming that Mr. Olivier was no longer entitled to TTD benefits because he was capable of light duty work. Mr. Olivier asserts that the evidence

presented at the hearing on the motion to modify was essentially the same as that presented at a previous hearing and that LUBA was unable to meet its burden of proving that a change in circumstances existed which would permit modification of his benefits. Mr. Olivier contends that only two doctors examined him both before and after the 2008 judgment and, because those doctors' opinions of his ability to work did not change, LUBA cannot prove that a change in circumstances occurred.

The workers' compensation judge retains jurisdiction over each workers' compensation case, and has the authority to make "modifications or changes to former findings or orders relating thereto if . . . it may be justified[.]" La.R.S. 23:1310.8(A). Further, La.R.S. 23:1310.8(B) states that:

> Upon the motion of any party in interest, on the ground of a change in conditions, the workers' compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, and shall state his conclusions of fact and rulings of law, and the director shall immediately send to the parties a copy of the award.

The party seeking to modify a workers' compensation judgment must prove by a preponderance of the evidence that the worker's disability has increased or decreased. *Hardee v. City of Jennings*, 07-242 (La.App. 3 Cir. 5/30/07), 961 So.2d 531, *writs denied*, 07-1779, 07-1799 (La. 11/9/07), 967 So.2d 505 and 967 So.2d 509. The determination of whether there is a change in circumstances is a finding of fact subject to the manifest error / clearly wrong standard of review. *Id.*

The evidence submitted at the hearing on the motion to modify suggested that Mr. Olivier has been examined by several doctors over a period of years. Records from Dr. John Cobb indicate that Mr. Olivier was initially treated conservatively for complaints related to his right knee and lumbar spine. An MRI

5

was obtained, and the radiologist's impression in his report was "lumbar spondylosis with suspected right focal disc herniation at L5 S1" and "central disc herniation at T6 and T7." In 2004, Mr. Olivier was referred to Dr. Daniel Hodges for rehabilitation and pain management. Dr. Cobb had released Mr. Olivier to light duty work but Dr. Hodges placed Mr. Olivier on no-work status. The record does not contain all of Dr. Hodges' medical records dated before the 2008 judgment. However, records from 2007 and 2008 were submitted into evidence. On November 19, 2007, Dr. Hodges noted that:

> Viel is in today for follow up. He continues with back pain, pain in his right hip. He describes his symptoms as constant stabbing. Sitting, standing, stair climbing and lifting aggravate the pain. Medication and rest help with the pain. He states that the symptoms began on 06/23/03, and are staying the same, lasting 8-12 hours a day. He rates the pain at 7 on an analog scale of 0 to 10.

The impression from that date's records is "1. History of herniated thoracic disc. 2. Progressive lumbar disc disease." Dr. Hodges refilled Mr. Olivier's medication, maintained his no-work status, and scheduled another follow-up appointment. On February 28, 2008, Dr. Hodges' progress note was essentially the same, and Dr. Hodges continued Mr. Olivier's medication, maintained his no-work status, and scheduled a follow-up appointment.

In 2004, Mr. Olivier saw Dr. George Williams for a second medical opinion. Dr. Williams thought Mr. Olivier's back pain was not caused by a work accident, but that the MRI revealed that "any sudden injury could exacerbate and induce pain with the patient's symptoms." Dr. Williams also opined that Mr. Olivier was capable of light duty work. Mr. Olivier also saw Dr. Wayne Lindemann that year for a second medical opinion. Although Dr. Lindemann suggested further testing and the possibility of steroid injections, he expected that Mr. Olivier would reach

6

maximum medical improvement within the next six months. Dr. Lindemann also thought that Mr. Olivier could perform light duty work with no lifting, pushing, or pulling greater than twenty pounds.

After the 2008 judgment, Mr. Olivier continued treatment with Dr. Hodges, and his medical records from that treatment were submitted into evidence. Those records indicate that Dr. Hodges saw Mr. Olivier approximately once every three months from December 2011 until the 2014 trial. In 2012, Dr. Hodges requested that Mr. Olivier undergo another MRI because it had been "some years." Dr. Hodges' review of that MRI in April of 2012 "reveals multilevel degenerative changes throughout the thoracic spine, commiserate [sic] with his current age and progression of his pre-existing thoracic disc disease. He has no overt stenosis." In the most recent records, from July 21, 2014, Dr. Hodges listed Mr. Olivier's complaints as:

> The patient . . . presents with chronic pain. Symptoms include back pain. Pain scores include a current pain level of 7/10. The pain is located in the mid back. The patient describes the pain as aching. The pain is constant. Pain exacerbations occur daily and last for hours. The patient describes symptoms as unchanged. Symptoms are exacerbated by bending, sitting, standing, motion, tension and WEATHER CHANGE. Symptoms are relieved by rest and opioid analgesics. Associated symptoms include sleep problems. Functional limitations: general activity and sleep. Current treatment includes opioid analgesics.

Dr. Hodges' examination of Mr. Olivier indicated that "[e]xamination of the lumbrosacral spine reveals – Restricted movement on extension and flexion and Restricted movement on lateral bending/Rotation[,]" as well as tenderness "[i]n a focal area of the paravertebral muscle in the TL region R>L" and the medial low back. Dr. Hodges continued Mr. Olivier's medications, injected a trigger point, and scheduled a return appointment in three months. In addition to Dr. Hodges'

medical records, the record contains a letter from the case manager, Denise Perry, to Dr. Hodges memorializing a conference in October of 2013. Therein, Ms. Perry memorialized Dr. Hodges' opinion that Mr. Olivier is "totally and permanently (T&P) disabled with respect to returning to work explaining that he has a number [of] protrusions in the thoracic spine that are in-operable."

Mr. Olivier was also seen by Dr. Lindemann for a reevaluated second medical opinion in 2011. Dr. Lindemann's impression at that time was "1. Thoracic Strain 2. Central disc herniation T-6 T-7 with no evidence of neurological compromise 3. Pre-existing lumbar spondylosis[.]" Dr. Lindemann stated that:

> My overall prognosis for Mr. Olivier[']s central disc herniation is good[.] He was injured over seven years ago without evidence of neurological compromise[.] I see no reason why he was unable to do light duty work, and Dr[.] Cobb, as well as Dr[.] Williams, in their reports, also felt that Mr[.] Olivier was capable of light duty work[.] . . . . I agree with the treatment that has been provided thus far, except for the fact that Dr[.] Hodges has felt that Mr[.] Olivier is disabled and unable to return to a working environment[.] Due to the fact that Mr. Olivier has not worked since the time of his injury, the statistical probability that he will return to gainful employment is less than 2%, although I still feel that he is capable of light duty work with no pushing, pulling or lifting greater than 20 pounds[.] Mr. Olivier is at maximum medical improvement with a 5% or less whole person impairment rating[.] He is capable of returning to work at light duty, with no pushing, pulling or lifting greater than 20 pounds, and avoiding repetitive twisting and turning at the thoracic spine[.]

Mr. Olivier was seen again by Dr. Lindemann for a subsequent second medical opinion in 2013. Dr. Lindemann's impression remained the same, and stated:

> Mr. Olivier was injured over ten years ago. He has not had any evidence of neurological compromise since that time. I see no reason why he is unable to work light duty, as per Dr. Beurlot, Dr. Cobb and Dr. Williams and I have agreed. Due to his chronic pain, I feel he should continue to follow up with Dr. Hodges every three months for medication management with a urine drug screen as he sees necessary. Mr. Olivier is capable of light duty, no pushing, pulling or lifting greater than 20 pounds and avoiding repetitive activity at the

thoracolumbar spine. He is at maximum medical improvement with a 5% more or less whole person impairment rating.

Finally, Mr. Olivier saw Dr. Rayland Beurlot in 2011 and 2014 for an independent medical exam. In 2011, Dr. Beurlot recited Mr. Olivier's medical history, stating that:

> He currently describes his status as in substantial pain most of the time. With lying down, he can get some relief. It hurts to stand for too long and his day is frequently alternated sitting and standing. He can make brief grocery shopping but cannot do extensive grocery shopping without having to take a break and sit for awhile. He can do some very light activities. He estimates he can handle about 10 pounds or so relatively comfortably. Anything heavier than that causes significant discomfort. To put this into a functional description, he does think he could probably utilize a two-gallon gas can to fill a lawnmower if he had to, but a five-gallon can would probably be too much He has previously worked as a carpenter. He would do frame up and some finish work. He tended not to do cabinetry work. He has not engaged in those occupational pursuits since the injury in 2003. He denies any other major injuries over the years either before or after this event.

Dr. Beurlot's impression at that time was that Mr. Olivier suffered from "1. Severe thoracic level pain, reportedly not much improved over the intervening eight years. There is a herniation of the disk at T6-7. 2. Lumbar changes, which although also a source of discomfort, were not his primary area of discomfort related to the 2003 incident." Dr. Beurlot opined that, from a nonoperative standpoint, Mr. Olivier was at MMI and probably had been for the last seven years. Dr. Beurlot also felt that Mr. Olivier could be released to light duty "as an alternation of position was provided, sit, stand, ambulation, etc., and agree that the 20-pound lifting restriction was reasonable. He would not tolerate prolonged maintenance of any one position and he would certainly never return to medium or heavy duty." However, Dr. Beurlot was concerned that, at the time of his examination, no repeat imaging

studies had been performed and suggested that a new CT myelogram, MRI and neurological consultation be obtained.

In 2014, Dr. Beurlot performed another examination of Mr. Olivier, including review of the MRI taken in 2012. Dr. Beurlot's impression at that time was "Chronic lower back pain, perhaps slightly worse than when seen in 2011. Activities are further limited than they were in 2011." Dr. Beurlot found no evidence of a significant myelopathy, although there were spondylitic changes in the thoracic spine and mild disc bulging. Dr. Beurlot felt that:

> Again, I do not see why these findings would preclude light activity. I concur that he would not be capable of going to medium or resumption of full duties as a carpenter. . . . It is unclear to this examiner why he has been unable to return to some degree of light activity over the years. As noted, the initial injury is 2003. This is not to say he is without pain, quite the contrary. He undoubtedly does have pain, but with medication this should be controllable to allow light activity, activities of daily living, etc. There is undoubtedly a fair degree of debilitation which has accompanied this illness due to the prolonged nature. . . . As far as work restrictions, would recommend less than 20 pounds lifting, frequent change in position. He may not work at heights, he may not climb ladders. He is to avoid stooping, bending, or twisting, but light low-resistance activity is to be encouraged.

In addition to the medical evidence, Mr. Olivier testified at the hearing. In that testimony, he testified that he has an eighth grade education and that he did not get his GED. According to Mr. Olivier, he can check his email, but doesn't really know how to operate a computer. When asked if there was a change in his condition, Mr. Olivier said that yes, the pain used to be only on one side, but is now on both sides. Mr. Olivier also testified that he has good days and bad days. On some days he can mow his lawn and finish mowing it. On other days he has to stop because his back hurts, and he might be able to finish mowing it that day, but it might be two or three days later. According to his testimony, on a bad day he is

unable to do much—he walks around, sits in the recliner and watches television. In addition to cutting his grass, Mr. Olivier also admitted to working on his vehicles, including changing the oil, and, on limited occasions, working on his house and in his carpenter shop.

During Mr. Olivier's testimony, the following colloquy occurred:

Q: On a bad day, could you do a job if you just had to sit down, and you can sit down and get up when you wanted but you had to either sit or stand?

A: I could.

Q: Every day on a bad day?

A: No, not every day, no.

However, Mr. Olivier qualified that statement, noting that on a bad day, his back sometimes hurts to the point where he has to lie down.

After considering all of the evidence and the parties' post-trial arguments, the workers' compensation judge found that LUBA had met its "burden of proof that there was a change in Mr. Olivier's condition, in that he is physically able to return to work with restrictions." Before issuing that ruling, the workers' compensation judge pointed out Mr. Olivier's testimony, including his testimony that he cuts the grass, sometimes does oil changes, and has done some pressure washing and painting at his house. Further, citing *Richardson v. Lil' River Harvesting*, 09-1090 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, the workers' compensation judge gave significant weight to the IME doctor's opinion, although he noted that it was not conclusive.

After reviewing the entire record in this case, we cannot say that the workers' compensation judge erred in concluding that LUBA met its burden of proof in establishing that there was a change in conditions or in concluding that

Mr. Olivier was capable of light duty work. *See, e.g., Vital v. Stine, Inc.*, 11-1088 (La.App. 3 Cir. 2/8/12), 85 So.3d 174, *writ denied*, 12-393 (La. 4/9/12), 85 So.3d 700. We especially note that, subsequent to the 2008 trial, additional imaging studies were obtained and Mr. Olivier was examined by multiple doctors, including twice by the IME physician, Dr. Beurlot. Perhaps most importantly, Mr. Olivier testified that he was able to perform various tasks around the house, including such potentially strenuous jobs as mowing the lawn and changing the oil in his vehicles.

Thus, having found no error in the workers' compensation judge's determination that a change in circumstances existed and that Mr. Olivier was capable of light duty work, we find no merit to Mr. Olivier's assignment of error.

## DECREE

For the foregoing reasons, Viel Olivier's exception of res judicata is denied. The judgment of the workers' compensation judge dated October 30, 2014, is affirmed. Costs of this matter are assessed to the appellant, Viel Olivier.

**EXCEPTION OF RES JUDICATA DENIED. WORKERS' COMPENSATION JUDGMENT AFFIRMED.**

VIEL OLIVIER

VERSUS

OLIVIER BUILDERS


**THIBODEAUX, Chief Judge, dissenting.**

The claimant was injured in 2003. One of his examining physicians, Dr. Daniel Hodges, consistently stated that Mr. Olivier was and is still unable to work. Dr. John Cobb opined that Mr. Olivier was able to do light duty. Dr. Wayne Lindemann agreed. Dr. Lindemann consistently maintained that he could perform light duty work. They have always from the beginning maintained that position. So, I am at a loss to fathom the existence of a "change in conditions." Dr. Raymond Beurlot, the independent medical examiner, examined Mr. Olivier in 2011 and 2014. In 2011, for instance, Dr. Beurlot concluded that Mr. Olivier was at maximum medical improvement and had been for the last seven years. He suggested light duty work. Dr. Beurlot examined Mr. Olivier again in 2014 based on new diagnostic studies. Again, he recommended light duty. In fact, Dr. Beurlot's opinion indicated that Mr. Olivier's back pain was slightly worse and his activities were more limited than in 2011. It appears that Mr. Olivier's condition worsened, rather than improved between 2008, the date of the judgment, and the time that the insurer filed its Motion to Modify under La.R.S. 23:1310.8(B). Indeed, there has been a "change in conditions," that is, Mr. Olivier's condition, if anything, has deteriorated. The trial judge was manifestly erroneous in concluding otherwise.

For the foregoing reasons, I respectfully dissent.