# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-365

## LUBA WORKERS' COMPENSATION

## VERSUS

## ALBERT DENNIS BABINEAUX

**********

## APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 14-02390
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**David Russell Bankston**
**2701 Johnston Street – Suite 301**
**Lafayette, LA 70503**
**Telephone: (337) 232-1444**
**COUNSEL FOR:**
    **Defendant/Appellee - Albert Dennis Babineaux**

**Eric J. Waltner**
**Allen & Gooch, A Law Corporation**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**Telephone: (337) 291-1400**
**COUNSEL FOR:**
    **Plaintiff/Appellant - LUBA Workers' Compensation**

**THIBODEAUX, Chief Judge.**

In this workers' compensation matter, claimant Albert Dennis Babineaux was adjudicated permanently and totally disabled. Thereafter, the insurer, LUBA Workers' Compensation (LUBA), filed a new dispute with the Office of Workers' Compensation, alleging Mr. Babineaux had a change in condition and was no longer permanently and totally disabled. LUBA also alleged that Mr. Babineaux had violated La.R.S. 23:1208 by working while receiving indemnity benefits. The workers' compensation judge (WCJ) denied LUBA's request for modification and found no fraud on the part of Mr. Babineaux. LUBA now appeals that judgment. Finding no manifest error in the WCJ's finding that LUBA had not proven, by a preponderance of the evidence, a change in Mr. Babineaux's condition or a forfeiture of his benefits, we affirm.

## I.

## <u>ISSUES</u>

LUBA asks this court to decide:

(1)     whether it was legal or manifest error not to hold that claimant had a change in his condition sufficient to modify the prior judgment proven by a preponderance of the evidence;

(2)     whether it was legal or manifest error to hold that claimant was permanently and totally disabled by clear and convincing evidence;

(3)     whether it was legal or manifest error to hold that claimant had not violated La.R.S. 23:1208.

## II.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of an accident that occurred on June 14, 2000, in the course and scope of Mr. Babineaux's employment as a self-employed electrical contractor with Dennis Babineaux Electrical Service (Babineaux Electric). In December 2000, Mr. Babineaux underwent an anterior cervical decompression and fusion surgery for the injury he sustained to his back. He was awarded temporary total disability benefits from June 1, 2000, through March 28, 2002, and supplemental earnings benefits (SEBs) from March 28, 2002. On August 6, 2010, after LUBA denied his demand to convert his indemnity benefits to permanent and total disability (PTD) status, Mr. Babineaux filed a claim seeking additional disability benefits based on his claim that he was permanently and totally disabled. His SEBs were then terminated on November 30, 2010.

Following trial, the WCJ rendered judgment in favor of Mr. Babineaux, finding him, by clear and convincing evidence, permanently and totally disabled due, in part, to the permanent nerve damage and continued severe muscle spasms directly related to his work injury as documented in his medical records. The WCJ did not award any penalties or attorney's fees. In *Babineaux v. LUBA*, 12-129 (La.App. 3 Cir. 6/6/12), 91 So.3d 1270, this court affirmed the WCJ's judgment.

On April 11, 2014, LUBA filed a new disputed claim for compensation, wherein it alleged: "Claimant had a change of circumstances and is no longer permanently and totally disabled such that the prior judgment needs to be modified. Claimant has violated 23:1208 by receiving indemnity benefits and working." In his answer, Mr. Babineaux denied any change in circumstances and

admitted, in his pre-trial statement, that he "has continued to perform occasional small electrical jobs" without pay or reimbursement, except for costs, that he was doing "at the time he was adjudicated to be permanently and totally disabled."

Through video surveillance, retail electrical supply account invoices,[1] and various testimony, LUBA presented evidence that Mr. Babineaux's supply accounts have remained active since the accident and that he has continued to engage in supervisory-type duties and performed some small electrical jobs on a gratuitous basis. In his testimony, Mr. Babineaux admitted that he had spinal surgery on September 8, 2011, which helped eliminate the pain and numbness in his legs. He also testified that the last time he saw his neurosurgeon, Dr. Patrick A. Juneau III, was on December 19, 2012, at which time he had no radicular pain, but still had lower back pain. Mr. Babineaux acknowledged that his symptoms are much better, although there are times when the symptoms are almost as bad as they were before the surgery. He has received multiple injections from Dr. Matthew Mitchell, a pain management specialist, which injections help his symptoms significantly; however, he still has painful, immobilizing spasms for which he seeks the treatment of Dr. Robert P. LeJeune, his chiropractor.

In his testimony, Mr. Babineaux also acknowledged that he continues to drive the truck, with bins filled with electrical tools and materials, that he drove when he was working; that he helped Donnie DeRouen fix a motor control unit in 2014; and that he supervises on occasion at Donnie DeRouen Electrical Services, Inc.'s (DeRouen Electric) worksites. At those times, he testified that he has the

---

[1]The certified records of Teche Electric Supply, LLC, Home Depot U.S.A., Inc., and HD Supply Power Solutions, Ltd. (HD Supply) were introduced into evidence. However, only the records of HD Supply are of any real significance herein given that they contain the majority of transactions made since the 2011 trial. The activity in the other records primarily occurred prior to 2011. The accounts, except for Home Depot, remained in the name of Babineaux Electric.

authority to tell the employees what to do or not do. When asked about surveillance video that showed him using a shovel to dig at one worksite, Mr. Babineaux admitted that there were "young bucks" present who could have used the shovel, but he was merely shifting sand in an effort to find where a pipe had been damaged so to avoid further damage. Mr. Babineaux noted that, under his doctors' orders, he was not supposed to do any physical labor.

The surveillance videos captured Mr. Babineaux bending down to pick up an ice chest, filling the ice chest, and loading it in his truck to bring along with him to a worksite. It also captured him probing the ground with a metal rod and then working with a shovel, traversing uneven terrain, walking with a box of electrical equipment, and then bending down to look inside a hole. Also shown was Mr. Babineaux building control panels over an eight hour timeframe with Donnie DeRouen.

Timesheets were entered into the record reflecting some of the work activities performed by Mr. Babineaux for DeRouen Electric, but Mr. Babineaux testified that the work identified on those documents were not necessarily work that he himself performed. Rather, he was merely making an accounting of what work was performed at the worksite. He admitted that he was sometimes given deer and fish and was allowed to fill his truck with fuel from DeRouen Electric's diesel tank.

Mr. Babineaux also testified to another time when he was called out to a water treatment plant for the City of Abbeville to determine what was wrong with the generator. He diagnosed the problem and instructed how to fix it. Mr. Babineaux also went on jobs with his son and has continued to perform occasional small electrical jobs without compensation for his church, his chiropractor, and

Page Wire Rope and Slings, such as changing light fixtures and outlets, running wire, or directing others on how to do so.

Michael L. DeRouen, the vice president of DeRouen Electric, testified that Mr. Babineaux worked for the company for over twenty years before leaving to go out on his own. Having left on good terms, Mr. Babineaux remained a close family friend. Given their long-standing relationship, Mr. DeRouen recalled that Mr. Babineaux came by a few years after his spinal cord injury and asked "if I would have a problem if he would stop by some of the jobs to visit with the guys and look over the electrical, which I said I did not have a problem with." Aware of Mr. Babineaux's disability and that his company's workers' compensation insurer would not cover Mr. Babineaux, Mr. DeRouen explained how he asked Mr. Babineaux to do some supervisory-type activities so that Mr. DeRouen could go bid out jobs: "Every now and then he would stay a while on the jobs advising my guys on ways they could do the work quicker or easier. He was however informed he was not allowed to do any physical work at all." Testimony reveals that there were five or six residential subdivisions where Mr. Babineaux went out and did similar activities as were disclosed in the surveillance video. But Mr. DeRouen explained that Mr. Babineaux was just helping out when he felt up to it and performing a job that Mr. DeRouen would not pay anyone to do as it was basically his job. The timesheets submitted by Mr. Babineaux merely reflected the work performed at the worksite and were not a record of Mr. Babineaux's activity. Moreover, none of Mr. Babineaux's time was ever billed to the customer, and he never requested payment. The DeRouens, however, "would give him deer, fish, and even fill up his truck with fuel."

5

In his deposition, William Seiler, a sales manager for HD Supply, testified that he was familiar with Mr. Babineaux as are all of his salespeople. And as for the active supply accounts, he explained that "for the little dollars that [Mr. Babineaux] is doing, I really don't know what he's doing." While Mr. Babineaux never discussed the extent of his disability with him, Mr. Seiler testified that "you could tell by the way he gets around[,]" explaining how Mr. Babineaux "looks like he's hurting to take every step." He further described how Mr. Babineaux's "knees are bent at all times and he's leaning over at probably ten degrees or something like that." Mr. Seiler also stated that Mr. Babineaux walks "like he's 90" and that he "could pass him backwards at one-third speed walking, he's that slow."[2] Mr. Babineaux testified that his retail purchases were mostly for other people, because he mistakenly believed he received a company discount.

Regarding the medical evidence, Dr. Juneau's notes from Mr. Babineaux's last visit on December 19, 2012, recorded:

> Albert Dennis Babineaux is one year and three months out from having undergone a lumbar decompressive laminectomy with instrumented fusion at L4-5 and L5-S1. . . . [X]-rays show good position of all six screws and the rods. The two interbody cages are in good position. He has excellent alignment of the lumbar spine on the lateral views. Clinically, he has no radicular pain down into the legs. He does have some lower back pain when the weather changes. On examination today he still has evidence of myelopathy from his previous cervical spinal cord injury. He remains totally disabled from working. He is permanently disabled from working from this point forward. Follow-up in this office will be as needed from this point forward.

Dr. Mitchell's records, dated June 6, 2015, noted how the spinal injections significantly reduced Mr. Babineaux's pain for a few months at a time,

---

[2]To put his comments in perspective, Mr. Babineaux was born in 1954 and is around "six, two (6'2")."

but "[t]he patient has severe spasticity, as a result of his spinal cord damage" and "persistent acute pain." Dr. LeJeune, Mr. Babineaux's treating chiropractor, testified that, due to his back and neck surgeries, Mr. Babineaux has chronic muscle spasms, muscle atrophy, a limp, and a curled up arm. He explained how Mr. Babineaux's nerves stay in an excited state, which he treats with manipulation and stretching as well as the injections provided by Dr. Mitchell. Dr. LeJeune has witnessed Mr. Babineaux in severe spasm, which he attributes to Mr. Babineaux's nerve damage that will only get worse with time. In his opinion, Mr. Babineaux's disability is greater than it was at the time of the last trial. While there has been a decrease in pain since the last surgery, Dr. LeJeune was of the opinion that there was also a decrease in functional ability. He further testified that he has no problem with Mr. Babineaux's activities as exercise and movement can relax excited nerves and contribute to continued function; merely sitting on a couch all day would be more detrimental to his condition.

Mr. Babineaux's wife, Lydia Jo Babineaux, testified to the negative and severe effects of Mr. Babineaux's increased activity, explaining how his muscles seize up and spasm when he gets home, which continue throughout the night. The spasms are sometimes so severe that his shoulder becomes dislocated, and they have had to rely on neighbors to move him when he falls. Through her testimony and Mr. Babineaux's, it was revealed that, as per his doctors' direction, the couple moved their bedroom downstairs because traversing the stairs had become too risky. The couple has even had to call Dr. LeJeune to the house to try to alleviate the spasms. While Mr. Babineaux feels good enough to stand around and tell others what to do at a job site, Mrs. Babineaux is clearly not in agreement given the episodes she has witnessed when he returns home from the worksite.

And even Mr. Babineaux conceded that he cannot "supervise" on a daily basis as his pain increases with the passage of time from his last injection and with the changes in weather and atmospheric pressure. Though he may have a few good days, his pain and muscle spasticity will catch up with him. His lack of consistency and dependability as well as his physical limitations make him essentially unemployable.

After considering the evidence and arguments of the parties, the WCJ rendered judgment in favor of Mr. Babineaux and against LUBA, denying its request to modify the previous PTD judgment. In her reasons, the WCJ explained:

> While the evidence here clearly establishes that Babineaux is able to perform certain tasks such as changing receptacles and light fixtures for friends or family and keeping an eye on workers, there is no evidence of his being paid for any of those services, nor any evidence of the value of those services, if any. Michael DeRouen testified that he would not pay anyone to perform the services Babineaux performed for him. There was no evidence of what price, if any, could be charged for changing outlets or lighting fixtures. And the evidence did not establish by a preponderance that Babineaux would be able to perform those services on a consistent basis.
>
> The WCJ has had the opportunity to observe Babineaux on multiple occasions over the years. Going back to the initial trial on compensability and whether an accident occurred, one factor that led the insurer to deny the claim was the fact that he continued working for a period after the accident. But this was found to have been a case of pushing himself too hard as opposed to not being hurt. The fact that Babineaux pushed himself to continue working after his accident is one reason his condition was so serious by the time he went to the doctor and a reason he damaged his nerves. While Babineaux is not the "perfect" witness or "perfect" person he appears to be a generally honest, hard-working man. It is entirely consistent with this court's experiences with him that he would push himself just to stay busy. Certainly his wife's exasperation was evident. But his drive to stay busy does not equate to an ability to

> earn any wage. At best the probabilities are evenly
> balanced, and therefore the insurer fails to meet[] its
> burden of proving by a preponderance of the evidence
> that the judgment should be modified.

As for LUBA's claim of forfeiture, the WCJ stated from the bench:

> I am willing to say that I don't make any finding of fraud.
> I mean, I -- and I'm shaking my head and kind of
> laughing. Really, I just don't see any way that I would
> be making a finding of fraud or violation of 1208.

III.

## STANDARDS OF REVIEW

The factual determination of whether a party has demonstrated a change in a workers' compensation claimant's condition "is entitled to great weight and will not be disturbed unless clearly wrong." *Hardee v. City of Jennings*, 07-242, p. 3 (La.App. 3 Cir. 5/30/07), 961 So.2d 531, 533, *writs denied*, 07-1779, 07-1799 (La. 11/9/07), 967 So.2d 505, 509. Whether an employee has forfeited his right to workers' compensation benefits is also a factual issue and, thus, subject to the manifest error or clearly wrong standard of review, which precludes the setting aside of a trial court's factual finding unless that finding is clearly wrong in light of the record reviewed in its entirety. *Carrier v. Harrington*, 14-1027 (La.App. 3 Cir. 4/8/15), 162 So.3d 1273, *writ denied*, 15-904 (La. 6/19/15), 172 So.3d 1091. In making these determinations, "great weight is to be attached to the trial court's evaluation of the credibility of the witness." *Thompson v. Natchitoches Parish Hosp. Serv. Dist.*, 365 So.2d 57, 59 (La.App. 3 Cir. 1978). This is because

> only the factfinder can be aware of the variations in
> demeanor and tone of voice that bear so heavily on the
> listener's understanding and belief in what is said.
> Where documents or objective evidence so contradict the

witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted). The issue to be resolved on review, therefore, is not whether the factfinder was right or wrong, but whether its conclusion was a reasonable one based on the record before the court. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

IV.

## LAW AND DISCUSSION

Pursuant to La.R.S. 23:1310.8, a party may seek the modification of a previous compensation award in a workers' compensation case "on the ground of a change in conditions." The burden of proof is on the party seeking the modification to show, by a preponderance of the evidence, that the disability of the worker has either increased or diminished. *Lormand v. Rossclaire Constr.*, 01-515 (La.App. 3 Cir. 12/12/01), 801 So.2d 675.[3]

In the present matter, LUBA asserts that the evidence recited above establishes, by a preponderance of the evidence, a significant change in Mr. Babineaux's functional capacity. LUBA argues that the evidence shows that Mr.

---

[3]Interestingly, Mr. Babineaux argues to this court, as he did to the WCJ, that, because this case involves PTD status, LUBA had to prove a change in condition by clear and convincing evidence—the burden imposed upon an employee seeking total disability status pursuant to La.R.S. 23:1221(2)(c). However, we find no merit in this argument in light of this circuit's long-standing jurisprudence applying the preponderance of evidence standard in such cases. *See Rourks v. Commercial Union Ins. Co.*, 497 So.2d 35 (La.App. 3 Cir. 1986) (denial of request to modify previous PTD adjudication).

Babineaux is able to engage in employment, at least as a supervisor, and has received compensation for this employment in the form of deer, fish, and fuel. Therefore, LUBA claims that the WCJ manifestly erred in its finding no change in his condition. We disagree.

After reviewing the entirety of the record evidence, we find no manifest or clear error in the WCJ's factual findings. Rather, as outlined in its reasons, the WCJ's decision is based on the medical evidence. Both Dr. Juneau and Dr. LeJeune opined that Mr. Babineaux is still permanently disabled, with Dr. LeJeune further opining that Mr. Babineaux's functionality has decreased along with his pain. Dr. Mitchell also recorded Mr. Babineaux's still "severe spasticity" as well as his "persistent acute pain."

Moreover, though the evidence does show that Mr. Babineaux has continued to perform small electrical jobs and to supervise workers, LUBA, as the WCJ noted, presented no evidence of what wage could be earned for these services or what value or price could be assigned to them. It also failed to present evidence to show that Mr. Babineaux would be able to perform these services on a consistent basis so to maintain any employment in a workers' compensation context. To the contrary, the evidence demonstrates that Mr. DeRouen would not pay anyone for the help that Mr. Babineaux provided him, and there was no evidence that Mr. Babineaux was paid for any of these services. Actually, the evidence shows that Mr. Babineaux received nothing, except reimbursement for the parts and fuel used when performing his small electrical services. While the DeRouens did give Mr. Babineaux deer and fish and allowed him to use their diesel, LUBA did not present any evidence of the value of these items or that it was more probable than not that these exchanges were made in lieu of monetary,

even if de minimis, payment for services rendered. The medical evidence as well as Mr. and Mrs. Babineaux's testimony further establish that Mr. Babineaux is not physically capable of performing even these minor tasks on a consistent basis.

The issue in this case ultimately comes down to whether Mr. Babineaux's admitted desire to stay busy equates to an ability to engage in any employment, which would constitute a change in his condition. This necessarily required a comparison of Mr. Babineaux's condition at the time of the previous PTD adjudication and his present condition, including his activities and functional capabilities. As the WCJ has watched and observed Mr. Babineaux over the course of a decade, she was in the best position to make this comparison. And the WCJ found that Mr. Babineaux's willingness to do these odd electrical jobs did not prove his ability to consistently perform these same jobs, but rather was merely consistent with him pushing himself, even to his detriment, to stay busy.

In fact, as Mr. Babineaux even noted in his trial statements, the activities of which LUBA now complains are of the same nature as the activities that Mr. Babineaux was performing at the time he was adjudicated permanently and totally disabled. Similar records and surveillance documenting Mr. Babineaux's activities were presented in the 2011 trial. The only difference in the present matter is the noted reduction of Mr. Babineaux's pain, coupled with his decreased functionality. As the medical records show, his severe nerve damage and spasticity remain. Further, the WCJ viewed the surveillance videos taken of Mr. Babineaux before the 2011 trial as well as the videos taken before this trial and concluded that, at best, the probabilities were even. In light of this evidence, the WCJ made reasonable credibility evaluations and factual inferences that we will

12

not disturb on review, particularly when there is no contradictory objective evidence or internal inconsistency in the testimony that would warrant such action.

Having reviewed all the evidence, we find that the record, in its entirety, does reasonably support a finding that LUBA failed to prove, by a preponderance of the evidence, that Mr. Babineaux is now capable of engaging in any employment as contemplated by our workers' compensation scheme. Accordingly, we cannot say that the WCJ's refusal to modify its previous PTD judgment was clearly or manifestly erroneous.

LUBA also argues the WCJ committed legal error in finding that Mr. Babineaux established, by clear and convincing evidence, that he was permanently and totally disabled. However, the burden to prove a change in circumstances was on LUBA. Because LUBA did not prove such a change by a preponderance of the evidence the burden to reestablish permanent and total disability never shifted back to Mr. Babineaux. Moreover, the WCJ never found that Mr. Babineaux had re-proved or even had to re-prove his PTD status; it merely focused on LUBA's burden of proof and its failure to meet its evidentiary burden. Therefore, we find this assignment of error is meritless.

Finally, LUBA argues that the WCJ committed either legal or manifest error in holding that Mr. Babineaux had not violated La.R.S. 23:1208 by receiving fish, deer, and fuel in compensation for his work with DeRouen Electric while receiving PTD benefits.

In *Scallon v. Boise Cascade Corp.*, 05-327, p. 5 (La.App. 3 Cir. 11/2/05), 915 So.2d 1004, 1007, this court stated the following regarding a claim for forfeiture of workers' compensation benefits:

The Louisiana Supreme Court has interpreted La.R.S. 23:1208 as providing for the forfeiture of workers' compensation benefits when a claimant (1) makes a false statement or representation; (2) that statement or representation is willfully made; and (3) the false statement or representation is made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708 (La. 9/5/95), 660 So.2d 7. A forfeiture pursuant to La.R.S. 23:1208 is not necessary where the false statement is inconsequential or was made inadvertently. *Jeanise v. Cannon*, 04-1049 (La.App. 3 Cir. 2/23/05), 895 So.2d 651. "Forfeiture of benefits under La.R.S. 23:1208 is a harsh remedy which must be strictly construed." *Regan v. Eunice Superette, Inc.*, 04-227, p. 5 (La.App. 3 Cir. 9/29/04), 884 So.2d 1209, 1213.

LUBA, in its arguments to this court, relies solely on Mr. Babineaux's admission that he knows it is a violation of the Louisiana Workers' Compensation Act to receive benefits while working. However, that admission, which is merely a recitation of the law, does not prove LUBA's claim for forfeiture, particularly here where Mr. Babineaux readily admitted and never denied that he was still performing minor electrical services pro bono. The WCJ clearly found Mr. Babineaux "to be a generally honest, hard-working man." As a credibility determination, we accord this finding great deference. We further find that the record evidence reasonably supports the WCJ's finding that Mr. Babineaux, rather than trying to circumvent our law, was pushing himself beyond his physical limits just to keep busy. In this absence of a showing of manifest error, we affirm the WCJ's finding of no fraud on the part of Mr. Babineaux.

## <u>CONCLUSION</u>

For these reasons, we find no manifest or clear error in the WCJ's denial of LUBA's claims for modification and forfeiture. We affirm the judgment of the Office of Workers' Compensation.

Costs of this appeal are assessed to LUBA Workers' Compensation.

**AFFIRMED.**